# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SHAUNA S.[1],
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:20-cv-661

Litkovitz, M.J.

**ORDER**

Plaintiff Shauna S. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI). This matter is before the Court for disposition based upon plaintiff's Statement of

Errors (Doc. 14), the Commissioner's response (Doc. 15), and plaintiff's reply (Doc. 16).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI in January 2016 (Tr. 25),

alleging disability since July 27, 2015, due to fibromyalgia, depression, and chronic back pain

(Tr. 118, 133). The applications were denied initially and upon reconsideration. Plaintiff,

through counsel, requested and was granted a *de novo* hearing before administrative law judge

(ALJ) Thuy-Anh Nguyen. Plaintiff and a vocational expert (VE) appeared and testified at the

ALJ hearing on August 14, 2018. On December 5, 2018, the ALJ issued a decision denying

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

plaintiff's DIB and SSI applications.  The Appeals Council denied plaintiff's request for review on June 29, 2020, making the ALJ's decision the final decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2019.

2. [Plaintiff] has not engaged in substantial gainful activity since July 27, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: disorders of the lumbar spine, osteopenia, fibromyalgia, affective disorder, anxiety disorder, and attention deficit disorder (ADD) (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except: [plaintiff] can occasionally climb ramps and stairs, but she can never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl.  She can

occasionally operate foot pedals with the right lower extremity and can
frequently operate foot pedals with the left lower extremity.  She must avoid
concentrated exposure to extreme cold and vibration, and she must avoid all
hazards, including unprotected heights.  [Plaintiff] can understand, remember,
and carry out simple, routine tasks, and she must not perform work involving
high production quotas or a fast pace.  [Plaintiff] is limited to a low stress work
setting, defined as one having occasional changes in a work setting, with such
changes explained in advance, and only occasional decision-making.  She can
occasionally interact with the public, co-workers, and supervisors.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and
416.965).[2]

7. [Plaintiff] was born [in] . . . 1967 and was 47 years old, which is defined as a
younger individual age 18-49, on the alleged disability onset date.  [Plaintiff]
subsequently changed age category to closely approaching advanced age (20
CFR 404.1563 and 416.963).

8. [Plaintiff] has a limited education and is able to communicate in English (20
CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability
because using the Medical-Vocational Rules as a framework supports a finding
that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job
skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s age, education, work experience, and residual
functional capacity, there are jobs that exist in significant numbers in the national
economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969,
and 416.969a).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security
Act, from July 27, 2015, through the date of this decision (20 CFR 404.1520(g)
and 416.920(g)).

(Tr. 27-36).

---

[2] Plaintiff's past relevant work was as a nurse assistant—a medium, semi-skilled, SVP 4 position that she actually
performed at the very heavy level.  (Tr. 34-35, 81).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of
representative light, unskilled, SVP 2 occupations such as routing clerk (80,000 jobs in the national economy);
marking clerk (300,000 jobs in the national economy); and inspector (60,000 jobs in the national economy).  (Tr. 36,
82).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors[4]

First, plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing to consider her left foot bunion deformity a severe impairment. Plaintiff alternatively seeks a remand under Sentence Six of 42 U.S.C. § 405(g) for administrative consideration of new evidence on this impairment from podiatrist Todd Adams, DPM. Second, plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence and, in particular, the opinion from treating physician Paul J. Massoud, M.D. Finally, plaintiff contends the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence but instead by mischaracterized and cherry-picked evidence.

#### 1. Left foot bunion deformity

The regulations define a "severe" impairment or combination of impairments as one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c).[5] Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions and the mental abilities to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 416.922(b). An impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities."

---

[4] Because the medical record in this case is limited, consisting of less than 150 pages, the Court does not find that a separate summary of the medical record would be beneficial. The Court will address relevant medical records in its analysis.

[5] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Order.

6

SSR 85-28,[6] 1985 WL 56856, at *3.  "The mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes."  *Stevenson v. Astrue*, No. 3:10-cv-442, 2011 WL 7561883, at *5 (S.D. Ohio Aug. 1, 2011) (citation omitted), *report and recommendation adopted*, 2012 WL 936754 (S.D. Ohio Mar. 20, 2012).

The claimant's burden of establishing a "severe" impairment at step two is "*de minimis*." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 325 (6th Cir. 2015) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Id.* (quoting *Higgs*, 880 F.2d at 862).

Once "an ALJ determines that one or more impairments is severe, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe."  *Singleton v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 1028, 1033 (S.D. Ohio 2015) (internal quotation marks omitted) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996))).  Where the ALJ finds at least one severe impairment, the ALJ's failure to find additional severe impairments at step two is not reversible error where the ALJ considers the claimant's impairments—both severe and non-severe—in the remaining steps of the disability determination.  *Maziarz v. Sec'y of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk*, 253 F. App'x at 583-84.  "So long as the ALJ finds at least one severe impairment and analyzes all impairments in the following steps, the

---

[6] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

characterization of other impairments as severe or non-severe is 'legally irrelevant.'" *Deaner v. Comm'r. of Soc. Sec.*, 840 F. App'x 813, 817 (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This rule acknowledges that an ALJ "properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity." *Winn*, 615 F. App'x at 326 (quoting *Maziarz*, 837 F.2d at 244).

The ALJ here found that plaintiff "has the following severe impairments: disorders of the lumbar spine, osteopenia, fibromyalgia, affective disorder, anxiety disorder, and attention deficit disorder (ADD). . . ." (Tr. 27). The ALJ specifically addressed plaintiff's bunions at step two of the sequential analysis but did not find to be them a severe impairment:

> The undersigned also considered [plaintiff]'s bunions, as [plaintiff] was diagnosed with a painful bunion deformity on her left foot, with pain and numbness at the balls of both feet (Ex.13F/1-2). However, [plaintiff] did not testify to, nor does the record show, significant signs of clinical dysfunction from this condition. Accordingly, this impairment is non-severe, as it causes no more than a minimal limitation in [plaintiff]'s ability to perform basic, work related activities.

(Tr. 28).

Plaintiff argues that her functional abilities would be "obviously . . . exacerbated by standing and walking" and her bunions "[c]learly . . . directly affect her ability to walk and stand. . . ." (Doc. 14 at PAGEID 569). Plaintiff, however, did not testify about this condition at all. Moreover, the only medical evidence of this condition in the record prior to the ALJ's decision is a single, March 2016 record from podiatrist Todd Adams, DPM. (Tr. 492-93). Dr. Adams noted that plaintiff experienced associated pain on palpation, and described plaintiff's foot impairment as a moderate bunion deformity. (Tr. 493). Dr. Adams recommended that plaintiff exhaust

8

conservative options before considering surgical intervention and discussed plaintiff's surgical options and risks. Dr. Adams ultimately did not recommend surgery, and there is no indication in the record that plaintiff followed up with him or any other specialist over the next three years.

The ALJ did not err by failing to speculate about the effect of plaintiff's bunions on her functional abilities beyond what the record reflects. It was plaintiff's burden to demonstrate the severity of the condition. 20 C.F.R. § 416.912(a). Given the dearth of evidence concerning plaintiff's bunion impairment, the ALJ's conclusion that this condition is not severe is supported by substantial evidence.

Alternatively, plaintiff argues that remand is appropriate under Sentence Six of 42 U.S.C. §405(g).[7] In particular, plaintiff argues that the ALJ should consider a March 2019 record from a follow-up visit with Dr. Adams (Tr. 9-11) post-dating the ALJ's adverse decision. The Court cannot consider evidence presented for the first time to the Appeals Council in deciding whether to uphold or reverse the ALJ's decision under sentence four of 42 U.S.C. § 405(g). *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)). Rather, when evidence is presented to the Appeals Council for the first time, the only issue to decide is whether, in light of that evidence, the matter should be remanded under Sentence Six of § 405(g) for further administrative proceedings.

---

[7] Plaintiff also seems to raise an error related to the Appeals Council's review of the new evidence proffered. (*See* Doc. 14 at PAGEID 571-73). The Court finds that the Appeals Council's decision declining review is not a final reviewable decision for purposes of 42 U.S.C. § 405(g) in the Sixth Circuit. *See Thick v. Comm'r of Soc. Sec.*, No. 2:18-cv-10154, 2018 WL 6683348, at *15-16 (E.D. Mich. Nov. 29, 2018) (summarizing authority within the Sixth Circuit holding that a federal court's review is limited to the ALJ's decision), *report and recommendation adopted*, 2018 WL 6650305 (E.D. Mich. Dec. 19, 2018).

Under Sentence Six of 42 U.S.C. §405(g), the Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  A Sentence-Six remand for consideration of additional evidence is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material.  42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 98; *see also Bass II v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Willis v. Sec'y of H.H.S.*, 727 F.2d 551, 554 (1984) (per curiam)).  "New" evidence is evidence that was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (quoting *Finkelstein*, 496 U.S. at 626).  "Material" evidence is evidence that creates "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988)).  The party seeking remand bears the burden of establishing these two remand requirements. *Hollon ex rel. Hollon v.Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing *Foster*, 279 F.3d at 357). *See also Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 435 (6th Cir. 2016) (citing

10

*Sizemore*, 865 F.2d at 711 n.1) ("Failure to establish any one of these three elements is fatal to the moving party's request.").

The new March 7, 2019 record from Dr. Adams initially notes that plaintiff's reported "painful bilateral heel" had been "present for several weeks." (Tr. 9). Dr. Adams goes on to diagnose "Plantar Fasciitis bilateral, Equinus, Calcaneal Spur, Onychomycosis, HAV bilateral, [and] Pain in limb." (Tr. 11). In his plan for plaintiff, he recommends "conservative measures" such as "rest, stretching, ice, supportive shoegear, injections, NSAIDs, [and] orthotics" as opposed to surgery. (*Id.*).

Beginning with materiality, plaintiff simply argues that it "stands to reason that if she had these problems with her feet both when she first saw [Dr. Adams] in 2016 and again when she saw him in early 2019, it is likely that she was having these problems all along." (Doc. 14 at PAGEID 573; *see also* Doc. 16 at PAGEID 610). On its face, however, the new record suggests that it is not material to plaintiff's condition prior to the ALJ's December 2018 decision. Dr. Adams's 2019 record reflects that the pain prompting plaintiff's visit had been present for "several *weeks*" and not several months or years, such that it would necessarily have been a problem all along as suggested by plaintiff. (Tr. 9) (emphasis added). *Cf. Cline*, 96 F.3d at 149 (quoting 20 C.F.R. § 404.970(a)(5)) (noting that the Appeals Council reviews new evidence only if that evidence "relate[s] to the period on or before the date of the administrative law judge hearing decision.").

Even if the impairments identified in the new record from Dr. Adams were material, however, plaintiff also fails to meet the other elements necessary to justify a Sentence Six

remand.  *See Glasco*, 645 F. App'x at 435 (citing *Sizemore*, 865 F.2d at 711 n.1) ("Failure to establish any one of these three elements is fatal to the moving party's request.").  As to the "new" and "good cause" elements of Sentence Six, plaintiff argues only that "she had no[] reason to anticipate that the ALJ would in her decision find [the impairments addressed by Dr. Adams] to be non-severe . . . prompting her to go back to see Dr. Adams . . . for confirmation of her ongoing problems."  (Doc. 14 at PAGEID 573).

For evidence to be new for purposes of Sentence Six, it must not only post-date but also have been unavailable to plaintiff prior to the ALJ's decision.  *See Ross v. Comm'r of Soc. Sec.*, No. 2:20-cv-1028, 2021 WL 456725, at *4 (S.D. Ohio Feb. 9, 2021) (citing *Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 464 (6th Cir. 2007)) ("Evidence is new only if it was not in existence *or was not available to Plaintiff* at the time of the administrative proceeding. *Foster*, 279 F.3d at 357. . . .  Dr. Wegner could have authored his opinion any time before [the ALJ's decision.]"), *report and recommendation adopted*, 2021 WL 719028 (S.D. Ohio Feb. 24, 2021).  Plaintiff cites no authority to suggest that her subjective belief about the severity of her bunions would satisfy either the "new" or "good cause" prongs of Sentence Six.  *See Foster*, 279 F.3d at 357 (citing *Willis*, 727 F.2d at 554) (to show "good cause," the "failure to acquire and present the evidence" to the ALJ must be reasonably justified).  A Sentence Six remand is therefore not warranted and plaintiff's first assignment of error is overruled.

### 2.  Medical opinion evidence

Plaintiff first argues that the ALJ's decision afforded partial weight to each of the medical opinions in the record, which makes her decision ambiguous and suggests that she substituted

her personal opinion over these medical opinions. Plaintiff also argues that the ALJ's consideration of treating physician Dr. Massoud's opinion, in particular, was insufficient under the treating physician rule.[8] Finally, plaintiff argues that the ALJ discounted Dr. Massoud's opinion to avoid the necessary result of a sedentary-work restriction under the medical-vocational guidelines (Grid) effective when plaintiff turned 50: a finding of disability. *See* 20 C.F.R. Part 404, Subpart P, App. 2, Rules 201.09 and 201.10.

Plaintiff's first argument is not well-taken. Plaintiff cites *Shields v. Comm'r of Soc. Sec.* in support, a case in which the ALJ afforded "little weight" to all of the medical opinions in the record and reached an RFC for the plaintiff that none had recommended. 732 F. App'x 430, 439 (6th Cir. 2018). By contrast, the ALJ here also afforded partial weight to the opinion of state agency medical consultant Leslie Green, M.D., who opined that plaintiff could perform a reduced range of light work. (Tr. 32, referring to Tr. 95-96, 109-110). The ALJ added additional limitations to plaintiff's RFC based on medical records that post-dated Dr. Green's review and plaintiff's testimony. (Tr. 33). Accordingly, the ALJ's assignment of partial weight to all of the medical opinions in the record does not equate to a substitution of her judgment over the medical opinions in the record.

As to Dr. Massoud's opinion, in particular, it is well-established that the findings and opinions of treating physicians are entitled to substantial weight for claims filed before March 27, 2017. Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486 F.3d at 242;

---

[8] 20 C.F.R. § 404.1527, which sets out the treating physician rule, has been amended for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. This amendment does not apply to plaintiff's claims, which she filed in January 2016. (*See* Tr. 25).

*Wilson*, 378 F.3d at 544. The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques[,]" and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and the specialization of the treating source. *Wilson*, 378 F.3d at 544; *see also Blakley*, 581 F.3d at 408 (quoting SSR 96-2p, 1996 WL 374188, at *4) ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. § 404.1527(c)).

In addition, an ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Gayheart*, 710 F.3d at 376 (citing SSR 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of h[er] case, especially "where a claimant knows that h[er] physician has deemed h[er] disabled;" and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

The ALJ gave the following assessment of Dr. Massoud's opinion:

The undersigned affords partial weight to the 2018 opinion of Paul Massoud, M.D. Dr. Massoud opined that, in an eight-hour workday, [plaintiff] could sit one to three hours, and she could stand and/or walk one to two hours. [Plaintiff] could lift and carry up to five pounds frequently, and she could occasionally lift/carry six to ten pounds. [Plaintiff] could never lift/carry 11 to 20 pounds or greater. [Plaintiff] would need to lie down, at least occasionally throughout the course of a typical day, due to her chronic pain (Ex. 11F/1). [Plaintiff] would likely be "off task" a significant part of a typical day, defined as 15 percent or more. [Plaintiff] would frequently miss work, due to her conditions (10 or more days per month) (Ex. 11F/2). The undersigned does not give controlling weight to this treating source opinion, as the opinion overstates [plaintiff]'s limitations, as compared with the totality of the evidence. Given [plaintiff]'s spine impairment, associated with painful motion and muscle spasms, the undersigned agrees that [plaintiff] requires exertional limitations, and further assesses postural and environmental limitations (Ex. 1F/7, 8, 5F/1, 10F/26). Such limitations are also consistent with diffuse tenderness from fibromyalgia, as well as weakness from osteopenia (Ex. 1F/8). However, the record does not support restrictions to the extent opined by Dr. Ma[s]soud. Indeed, Dr. Mas[s]oud failed to cite to any objective evidence to support his opinion that [plaintiff] would be off-task 15 percent of the workday, and miss 10 or more days of work per month.

(Tr. 33).

Consistent with 20 C.F.R. § 404.1527(c)(2), the ALJ reasonably found that Dr. Massoud's opinion was not well-supported and not consistent with other substantial evidence in the record. (Tr. 33). In particular, the ALJ discussed plaintiff's daily activities that were inconsistent with the restrictions imposed by Dr. Massoud: managing her own personal care,

15

light chores, preparing meals, in-store shopping, visiting family, and caring for her child who

uses a wheelchair. (Tr. 32, referring to Tr. 73-74, 77-78, 378). The ALJ also cited evidence

showing plaintiff did not adhere to the conservative treatment regimens prescribed, indicating

that plaintiff's symptoms were not as severe as Dr. Massoud's limitations would suggest. (*Id.*,

referring to Tr. 365, 434 (records reflecting TENS unit use, chiropractic care, medication, and

physical therapy as prior treatments); Tr. 365 (record stating that plaintiff did not finish a six-

week round a physical therapy); Tr. 57-60 (plaintiff's testimony that she did not use a

recommended brace, TENS unit, or pursue chiropractic care)). While plaintiff testified that

chiropractic care was cost prohibitive, she stated only that the brace was "uncomfortable[,]" she

"didn't like" the TENS unit, and that she completed at least some physical therapy despite pain.

(Tr. 57-60).[9] *Cf. Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013)

(holding that it is appropriate to consider prescribed treatments in assessing a claimant's

subjective symptoms, but the ALJ should also consider the claimant's reasons for pursuing (or

not) such treatments). The ALJ also noted that plaintiff was advised by her rheumatologist to

develop an aerobic exercise regimen notwithstanding her complaints. (Tr. 32, referring to Tr.

361[10]).

      Finally, the ALJ highlighted several records demonstrating physical abilities inconsistent

with the less than sedentary restrictions imposed by Dr. Massoud. (*Id.*, citing Tr. 426-27

---

[9] The Commissioner also highlights that plaintiff reported personality issues with both of her pain management specialists, Mukarram Khan, D.O., and Michael Danko, M.D., and did not try injection treatments for fear of needles. (*See* Tr. 434, 452).

[10] Plaintiff's rheumatologist, Robert E. Hiltz, M.D., continued to recommend exercise and a gluten free diet at a follow-up approximately 9 months later, even though plaintiff reported that pain had kept her from exercising and she had not followed through on the gluten-free diet recommendation. (Tr. 385, 388).

(January 2017 orthopedic surgeon record showing normal muscle strength, no lumbar spasms, no tenderness on palpation, no radiating leg pain on bilateral tension test, and normal gait); Tr. 421-23 (March 2017 orthopedic surgeon record reflecting normal muscle strength, normal lumbar range of motion, and normal gait; noting plaintiff's "overall back pain has improved"; and noting plaintiff was "markedly better" and did not "need[] active follow-up");[11] Tr. 435-36 (March 2017 pain management record showing some tenderness on palpation, positive straight leg raising and Patrick's test, but normal spinal range of motion and gait)). In addition, the ALJ's comment that plaintiff had "unremarkable physical examinations" is supported by substantial evidence. Dr. Massoud's notes from plaintiff's examinations in October 2016 (new patient visit), November 2016, February 2017, July 2017, August 2017, and February 2018 each recorded normal physical examination findings, with the only specific musculoskeletal finding being "exhibits no edema." (Tr. 399, 442, 451, 455, 460, 468). Dr. Massoud observed lumbar tenderness and spasm and straight leg raising on the left to 10 degrees on examination only in December 2016, just after plaintiff's low back injury, and lumbar tenderness and spasm in June 2018, when plaintiff visited "to be evaluated for disability." (Tr. 464, 480, 483).

In addition, the ALJ reasonably found that there was no objective evidence to support Dr. Massoud's opinion that plaintiff would be "off-task" 15% of the workday and miss 10 or more days of work per month. (Tr. 33). Dr. Massoud opined that the "off-task" percentage was mostly attributable to plaintiff's depression and anxiety (Tr. 479); yet, as noted by the ALJ,

---

[11] These first two records from Dr. Stambough show normal to slightly below average lumbar flexion, lateral bend, and rotation. (Tr. 421, 426-27). In the January 2017 record, Dr. Stambough noted plaintiff's lumbar extension at 0 degrees, presumably because of a documented low back injury that a occurred just prior to this visit. (*See* Tr. 462 (December 2016 Dr. Massoud record) ("She was bent over cleaning and had sudden severe left low back pain.")).

plaintiff's mental health impairments did not require hospitalization, were conservatively treated, and did not manifest significantly on mental status examinations. (Tr. 32, referring to Tr. 378-79 (consultative examination by Brian Griffiths, Psy.D., demonstrating largely normal mental status other than plaintiff appearing "somewhat depressed"),[12] Tr. 439-44 (normal mental status examinations recorded by Dr. Massoud); Tr. 34, referring to Tr. 360, 399, 435 (normal psychiatric findings on examination by plaintiff's rheumatologist Dr. Hiltz, pain management specialist Dr. Danko, and Dr. Massoud at his initial visit with plaintiff). While plaintiff's medication for mental health impairments is well-documented, it was not unreasonable for the ALJ to conclude that the medical record did not square with the significant limitations endorsed by Dr. Massoud. *Cf. Wright v. Comm'r of Soc. Sec.*, No. 2:16-cv-297, 2017 WL 4339670, at *2 (S.D. Ohio Sept. 29, 2017) (there is a "reasonable expectation that a plaintiff who suffers from severe and frequent symptoms of signification duration will have the frequency, severity, and duration of those symptoms reported somewhere in their treatment notes. . . .").

Plaintiff next argues that, even if it was appropriate to give Dr. Massoud's opinion less than controlling weight, the ALJ failed to demonstrate that she considered the balance of the 20 C.F.R. § 404.1527(c) factors in evaluating his opinion. Plaintiff is correct that the ALJ did not explicitly reference each factor. "The ALJ[,]" however, "need not perform an exhaustive, step-by-step analysis of each factor; [he] need only provide 'good reasons' for both [his] decision not to afford the physician's opinion controlling weight and for [his] ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (citations omitted).

---

[12] Specifically, Dr. Griffiths stated: "[Plaintiff's] mood was somewhat depressed. However, her affect was reactive. She was not tearful during the examination. . . . [Plaintiff] displayed no autonomic or motoric indications of anxiety. . . ." (Tr. 379).

18

The ALJ here explained that she discounted Dr. Massoud's opinion because it overstated plaintiff's limitations when compared to the record as a whole and parts of the opinion were wholly unsupported, and her decision elsewhere provides the specific evidence discussed above that support this conclusion. *See supra* pp. 15-17; *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020) ("While the ALJ did not reference each factor, he did discuss the factor most important to this case, *i.e.*, the consistency (or lack thereof) of the doctors' opinions with the record as a whole."). *See also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("[T]he procedural protections at the heart of [20 C.F.R. § 404.1527(c)(2)] may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments.").

Arguing that Dr. Massoud's opinion was supportable, plaintiff highlights Dr. Massoud's knowledge of plaintiff's treatment with her pain management specialists and a rheumatologist and his agreement with those physicians' pain medication prescriptions. The Court does not find this to be particularly relevant evidence supporting, or to constitute an especially convincing explanation for, Dr. Massoud's opinion regarding plaintiff's functional limitations. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Knowledge of plaintiff's previous treatment

for specific impairments does appear to confirm the existence of such impairments, but it does not convey anything particular about the severity of or limitations from those impairments.

In support of Dr. Massoud's opinion, plaintiff also highlights one record reflecting an acute episode of increased low back pain (Tr. 462-64: December 2016 record reflecting treatment after a sudden bout of low back pain when plaintiff was bent over cleaning), and one record with a particularly negative mental health symptom report by plaintiff (Tr. 452: July 2017 record in which plaintiff reports ineffective medications, crying and being tired all the time, not being motivated, and high anxiety). The first record reflects an unusually aggravated back condition in December 2016, but subsequent records from Dr. Massoud reflect normal physical examination findings (Tr. 399, 442, 451, 455, 460, 468; *see also* Tr. 421-23, 426-27), which undermine the supportability of this single treatment note. The second record, while consistent with plaintiff's testimony, can also be contrasted with other records that demonstrate some improvement in mental health symptoms. (*See, e.g.*, Tr. 439 (February 2018 Dr. Massoud record in which plaintiff reported that BuSpar "helps a little" and Seroquel "helps her sleep"); Tr. 480 (June 2018 Dr. Massoud record in which plaintiff reported that increased doses of Trintellix and BuSpar seemed to help with anxiety and that she was experiencing only "some" depression)). Neither record undercuts the substantial evidence discussed above supporting the ALJ's decision to decline to give Dr. Massoud's opinion controlling or even great weight.

Arguing that Dr. Massoud's opinion was consistent with other substantial evidence in the record, plaintiff notes that the pain medications prescribed to plaintiff by her pain management specialists and rheumatologist "obviously" demonstrated "high level" pain. (Doc. 14 at PAGEID

583-84). While Dr. Massoud's continuation of certain pain medications may reflect that plaintiff was consistently experiencing pain, it does not detract from the evidence cited by the ALJ suggesting that the extent of Dr. Massoud's physical functional limitations was not consistent with substantial evidence in the record. Plaintiff also points to several aspects of Dr. Griffiths's consultative evaluation report that could be read to support more extreme mental functional limitations (e.g., plaintiff's difficulties with two attention and concentration assessment tasks; plaintiff's reports of low energy, emotional fluctuations, and nervousness; and Dr. Griffiths's note that plaintiff may have mood extremes). Dr. Griffiths's report at other points, however, reflects relatively benign mental status findings. (Tr. 375-81). In any event, even where there is substantial evidence supporting plaintiff's position, the ALJ's decision must stand "if the evidence could reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). *See also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

In sum, the evidence highlighted by plaintiff notwithstanding, the ALJ provided "good reasons" for failing to assign controlling or even great weight to Dr. Masoud's opinion. 20 C.F.R. § 404.1527(c)(2). As such, the Court does not find that the ALJ's decision was driven by a desire to avoid the consequences of applying the Grid (i.e., a finding that plaintiff was disabled). Plaintiff's second assignment of error is overruled.

### 3. The ALJ's RFC determination

Plaintiff argues that the ALJ mischaracterized and cherry-picked evidence in the record to support her RFC decision. In particular, plaintiff argues that the ALJ unduly extrapolated about her work abilities based on the daily activities discussed in her testimony and consultative

examination, ignored her testimony that demonstrated less than sedentary work capability and highlighted the severity of her mental impairments, understated the import of her medical treatment record, and overstated a finding of two Waddell's signs on testing.

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record."  SSR 16-3p, 2016 WL 1119029, at *2.  ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms.  *See, e.g.*, *Rogers*, 486 F.3d at 246-49.  In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ."  SSR 16-3p, 2016 WL 1119029, at *1 (March 16, 2016) (rescinding and superseding SSR 96-7p).  To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record.  *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation.  The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms.  SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones*, 336 F.3d at 475-76.  Step two of symptom evaluation shifts to the severity of a claimant's symptoms.  The ALJ must consider the

22

intensity and persistence of the symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities.  *See* 20 C.F.R. §§ 404.1529(a) and (c);

SSR16-3p, 2016 WL 1119029, at *4.  In making this determination, the ALJ will consider the

following:

> (i)     Your daily activities;
>
> (ii)    The location, duration, frequency, and intensity of your pain or other
>         symptoms;
>
> (iii)   Precipitating and aggravating factors;
>
> (iv)    The type, dosage, effectiveness, and side effects of any medication you
>         take or have taken to alleviate your pain or other symptoms;
>
> (v)     Treatment, other than medication, you receive or have received for relief
>         of your pain or other symptoms;
>
> (vi)    Any measures you use or have used to relieve your pain or other
>         symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes
>         every hour, sleeping on a board, etc.); and
>
> (vii)   Other factors concerning your functional limitations and restrictions due to
>         pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability

unless this evidence alone supports a finding of disability.  SSR 16-3p, 2016 WL 1119029, at *5

("If we cannot make a disability determination or decision that is fully favorable based solely on

objective medical evidence, then we carefully consider other evidence in the record in reaching a

conclusion about the intensity, persistence, and limiting effects of an individual's symptoms.");

20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and

23

persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9.  *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility.  There is no indication that the ALJ failed to do so.  This claim therefore lacks merit. . . .").  Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).[13]

---

[13] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility."  With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference.  At least one Sixth Circuit decision subsequent to the enactment of SSR 16-3p, however, has retained the notion of deference to the ALJ in the symptom-consistency context.  *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements.").

24

The ALJ determined that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence of record.  In support of this conclusion, the ALJ cited to the evidence of plaintiff's reported daily activities, conservative treatment, failure to follow prescribed treatment, symptom exaggeration, unremarkable physical examination findings, conservative management of her mental health symptoms, and mental health examinations generally showing no ongoing symptoms of depression, bipolar disorder, or ADD.  (Tr. 32).

Plaintiff argues that the ALJ overstated her activities of daily living, because her testimony suggested that they were, in fact, significantly limited.  The ALJ referred to plaintiff's management of her own personal care and financing, light chores, meal preparation, in-store shopping, visits with family, and care of her child in a wheelchair.  (*Id.*).  The fact that these activities, on their own, may not demonstrate an ability to do full-time work on a sustained basis does not mean that the ALJ erred in considering them.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").  *See also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing 20 C.F.R. § 404.1572 and quoting *Walters*, 127 F.3d at 532) ("Although the ability to [perform activities of daily living] is not direct evidence of an ability to do gainful work, '[a]n ALJ may . . . consider [such] activities . . . in evaluating a claimant's assertions of pain or ailments.'").  In addition to considering plaintiff's testimony about her activities of daily living, the ALJ further discussed plaintiff's failure to follow prescribed treatments; records showing normal spinal range of

motion, muscle strength, and gait; and unremarkable mental status examinations by Dr. Massoud and other medical providers.  The ALJ reasonably considered these factors in evaluating plaintiff's subjective complaints of pain and limitations.  *See* 20 C.F.R. § 404.1529(c)(3).

Plaintiff also argues that the ALJ improperly characterized both her physical impairment treatment (non-surgical options such as physical therapy, chiropractic care, medication, and a TENS unit) and mental impairment treatment (counseling and psychotropic medications) as "conservative" and unfairly implied her symptoms and limitations were not significant.  (Doc. 14 at PAGEID 588).  Contrary to plaintiff's argument, courts routinely uphold an ALJ's consideration of the conservative nature of a claimant's treatment as one factor in evaluating the consistency of a claimant's subjective symptoms with a claim of disability.  *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638-39 (6th Cir. 2016) (claimant's routine and/or conservative treatment for allegedly disabling impairments supported ALJ's assessment) (citing *Lester v. Soc. Sec. Admin.,* 596 F. App'x 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment)); *McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment.")).  While the extent of treatment pursued does not necessarily translate into the extent to which a claimant is functionally limited, the Court is not persuaded that the ALJ's consideration of plaintiff's level and type of treatment was inappropriate.

Plaintiff next faults the ALJ for noting that plaintiff may have been exaggerating her symptoms because she exhibited two of five "Waddell's signs" on testing with orthopedic surgeon Dr. Stambough.[14]  (Tr. 32, referring to Tr. 422).  While positive Waddell's signs are not indicative of malingering or secondary gain, *see Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 422 (6th Cir. 2013), the ALJ's finding of possible symptom exaggeration was only one of a number of findings the ALJ cited in the evidence when evaluating plaintiff's subjective complaints of pain and other symptoms.  To the extent that any error occurred regarding the ALJ's consideration of Waddell's signs, the error was harmless given that the other evidence cited by the ALJ substantially support the ALJ's decision to discount plaintiff's complaints of disabling pain and limitations.

The ALJ here conducted a thorough evaluation of plaintiff's complaints of pain and other disabling symptoms in light of the objective, clinical, and opinion evidence of record. Substantial evidence supports the ALJ's evaluation of plaintiff's subjective allegations and the conclusion that such allegations were not entirely consistent with the medical evidence of record. *See* 20 C.F.R. § 404.1529(a).  The ALJ was not unreasonably selective in her consideration of the medical evidence and plaintiff's testimony.  On the basis of the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence.  Plaintiff's third assignment of error is overruled.

---

[14] Plaintiff also argues that the ALJ ignored the objective findings made by Dr. Stambough consistent with more significant physical impairments.  As noted above, however, the January 2017 visit occurred just after plaintiff has sustained an acute low back aggravation.  Moreover, the ALJ specifically considered the Dr. Stambough's findings from January and March 2017 (Tr. 32, referring to Tr. 421, 427) and generally acknowledged plaintiff's "spine impairment[] associated with painful motion and muscle spasms. . . ."  (Tr. 33).

Based on the foregoing, plaintiff's Statement of Errors (Doc. 14) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**.  **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date:     January 18, 2022

Karen L. Litkovitz
Chief United States Magistrate Judge